## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE, WESTERN DIVISION

| | |
|---|---|
| **JOHN DOUCETTE III, FARRELL FLOWERS, JAMES MADDOX, SCOTT MEDFORD, SCOTT MORLEY, JAMES PARKS, RALPH PEEVYHOUSE, REGINALD SMITH, ANTHONY VITIER, JAMES BLACK, DON CARPENTER, JEREMY JONES,  and ANDRICO WOODS,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**DIRECTV, INC., DIRECTV, LLC, and MULTIBAND CORP.,**<br><br>**Defendants.** | **Case No.** |

## COMPLAINT

Plaintiffs John Doucette III, Farrell Flowers, James Maddox, Scott Medford, Scott Morley, James Parks, Ralph Peevyhouse, Reginald Smith, Anthony Vitier, James Black, Don Carpenter, Jeremy Jones, and Andrico Woods, by and through their undersigned counsel, for their individual complaints against DIRECTV, Inc. and DIRECTV LLC (together, "DIRECTV"); and Multiband Corp., ("Provider Defendant" or "HSP Defendant") (collectively with DIRECTV, "Defendants"); hereby state as follows:

### NATURE OF SUIT

1.      DIRECTV—the largest provider of satellite television services in the United States—is responsible for a far reaching "fissured employment"[1] scheme.  In order to

---

[1] Fissured employment describes the practice of a large company attempting to shed its role as a direct employer and purporting to disassociate itself from the workers responsible for its products (albeit maintaining tight control over the method, manner,

expand and service its customer base (topping more than 20 million domestic subscribers), DIRECTV has engaged tens of thousands of technicians—including each of the Plaintiffs in this case—to install and repair its satellite systems. Although DIRECTV requires these technicians to drive a DIRECTV-branded vehicle, wear a DIRECTV uniform, and perform their work according to DIRECTV's exacting policies and procedures, DIRECTV disclaims any legal relationship with these workers, tagging them instead as "independent contractors" or employees of subordinate entities (including the named service provider Defendant). But fortunately for these workers, it is the economic reality of the relationship—not DIRECTV's self-serving labels—that controls whether Plaintiffs meet the definition (among the broadest ever legislated) of an "employee" under the Fair Labor Standards Act ("FLSA").

2.      Plaintiffs' claims squarely challenge this dangerous trend, and are not the first to do so. The U.S. Department of Labor ("DOL") has made a priority of investigating and exposing multi-party business arrangements that shirk compliance with the FLSA. *See* http://wage-hour.net/post/2012/09/25/Fissured-Industry-Enforcement-Efforts-Continue.aspx (last visited Oct. 19, 2014). The DOL's Misclassification Initiative, launched under Vice President Biden's Middle Class Task Force, is aggressively combating this

---

quantity, and quality of production). The practice of outsourcing an employer's responsibilities and obligations to subordinate entities and subcontractors is highly profitable for companies like DIRECTV, but results in stagnation of wages and benefits and causes rampant violations of wage-and-hour laws. *See e.g.*, David Weil, *The Fissured Workplace: Why Work Became So Bad for So Many and What Can Be Done to Improve It* (Harvard Univ. Press, Feb. 3, 2014); David Weil, *Enforcing Labour Standards in Fissured Workplaces: The US Experience*, 22 Econ. & Lab. Rel. Rev. 2, at 33-54 (July 2011).

pervasive issue in order to restore rights denied to individuals.[2]  In September 2011, then-Secretary of Labor Hilda L. Solis announced the signing of a Memorandum of Understanding between the DOL and the Internal Revenue Service (IRS), under which the agencies combine resources and share information to reduce the incidence of misclassification of employees, to help reduce the tax gap, and to improve compliance with federal labor laws.  The DOL's Wage and Hour Division is also partnering with individual states whose workers are being subjected to this practice.[3]

3.      The individual Plaintiffs joined herein intend to prove in this litigation that they are legally employed by DIRECTV and, where applicable, one or more of the named Provider Defendants, and are entitled to the overtime and minimum wage protections of the FLSA.

## JURISDICTION AND VENUE

4.      The FLSA authorizes court actions by private parties to recover damages for violation of the FLSA's wage and hour provisions. Jurisdiction over Plaintiffs' individual FLSA claims is based on 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

---

[2] "The misclassification of employees as something else, such as independent contractors, presents a serious problem, as these employees often are denied access to critical benefits and protections—such as family and medical leave, overtime compensation, minimum wage pay and Unemployment Insurance—to which they are entitled. In addition, misclassification can create economic pressure for law-abiding business owners, who often struggle to compete with those who are skirting the law. Employee misclassification also generates substantial losses for state Unemployment Insurance and workers' compensation funds." *See* http://www.dol.gov/opa/media/press/whd/WHD20120257.htm (last visited Oct. 19, 2014); *see generally*, DOL Misclassification Initiative, available at http://www.dol.gov/whd/workers/misclassification/ (last visited Oct. 19, 2014).

[3] *See, e.g.*, DOL Misclassification Initiative, *available at* http://www.dol.gov/whd/workers/misclassification/#stateDetails (last visited Oct. 19, 2014).

5.      Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims alleged herein occurred in this judicial district and Defendants are each subject to personal jurisdiction in this district.

**PARTIES**

6.      John Doucette III is an individual residing in Memphis, Tennessee.

7.      Farrell Flowers is an individual residing in Maryville, Tennessee.

8.      James Maddox is an individual residing in Madisonville, Tennessee.

9.      Scott Medford is an individual residing in Centerton, Arkansas.

10.     Scott Morley is an individual residing in Gallatin, Tennessee.

11.     James Parks is an individual residing in Memphis, Tennessee.

12.     Ralph Peevyhouse is an individual residing in Dyer, Tennessee.

13.     Reginald Smith is an individual residing in Arlington, Tennessee.

14.     Anthony Vitier is an individual residing in Hendersonville, Tennessee.

15.     James Black is an individual residing in Strawberry Plains, Tennessee.

16.     Don Carpenter is an individual residing in Burlison, Tennessee.

17.     Jeremy Jones is an individual residing in Memphis, Tennessee.

18.     Andrico Woods is an individual residing in Memphis, Tennessee.

19.     DIRECTV, Inc. is a Delaware corporation with its principal place of business in El Segundo, California. DIRECTV, Inc. does business as DIRECTV Home Services. In December 2011, DIRECTV, Inc. merged with another DIRECTV entity, DIRECTV Operations, LLC. The resulting entity is known as DIRECTV, LLC, which is a Delaware corporation with its principal place of business in El Segundo, California.

20. Defendant Multiband Corp. ("Multiband") is a Minnesota corporation, with its principal place of business in New Hope, Minnesota.

21. All Plaintiffs performed work for DIRECTV and, where applicable, the Provider Defendant in Tennessee.

22. All Defendants do business or have done business in Tennessee.

## COMMON FACTUAL ALLEGATIONS

### DIRECTV's Fissured Employment Scheme: The Provider Network

23. Plaintiffs' principal job duty as technicians was to install and repair DIRECTV satellite television service.

24. DIRECTV oversees a network of Providers (the "Provider Network") who supply DIRECTV this workforce of technicians, either by serving as their ostensible employer, or by "subcontracting" with technicians dubbed "independent contractors."

25. DIRECTV conceived of, formed, and manages DIRECTV's Provider Network. DIRECTV operates its Provider Network nationwide from its headquarters in El Segundo, California, reaching each state where Plaintiffs work.

26. The Provider Network is comprised of principal intermediaries that DIRECTV dubs its Home Service Providers ("HSPs"), secondary intermediaries deemed "Secondary Providers," as well as a patchwork of largely captive entities that are generally referred to as subcontractors.

27. Upon information and belief, at all relevant times, DIRECTV was the primary, if not the only, client of the Providers and was the source of substantially all of each Provider's income.

28.     During the relevant time period, and as alleged in more detail *infra*, many HSPs were subsumed by DIRECTV through a series of mergers and acquisitions, leaving, for purposes relevant to the instant cases, only HSPs DirectSat, MasTec, and Multiband.

29.     DIRECTV controls the Provider Network through a variety of means including detailed agreements known as Home Services Provider Agreements, Services Provider Agreements, and Secondary Provider Agreement of Equipment Installation and Service (collectively referred to herein as the "Provider Agreements"). The Provider Agreements establish parallel—indeed, effectively identical—business relationships between DIRECTV and each HSP and subcontractor. The salient provisions of each Provider Agreement contain the same policies, procedures, performance standards, and payment method requirements.

30.     The Provider Agreements specify DIRECTV's mandatory policies and procedures. And they obligate DIRECTV's intermediaries to hand them down to the technicians.

31.     The Provider Agreements enable DIRECTV to control nearly every facet of the technician's work, down to the "DIRECTV" shirts they are required to wear and the "DIRECTV" ID card they must show customers.  DIRECTV assigns each technician a scope of work described in a Work Order that DIRECTV itself delivers to each technician via a centralized computer software system that DIRECTV controls.   DIRECTV mandates particularized methods and standards of installation to assure DIRECTV's equipment is installed according to the dictates of DIRECTV's policies and procedures. As a consequence, each technician's essential job duties are virtually identical no matter where performed and no matter which intermediary the technician is ostensibly working for.

32.     Plaintiffs typically started their workdays after receiving daily work schedules assigned through DIRECTV's dispatching systems. DIRECTV used a database program known as SIEBEL to coordinate the assignment of particular work orders to technicians using each technician's unique "Tech ID Number."

33.     After receiving their daily work schedules, Plaintiffs typically called the customer contact for each of their assigned jobs to confirm the timeframe within which the technician expected to arrive at the customer's home. Plaintiffs then traveled to their first assigned job and thereafter continued to complete the jobs assigned by Defendants in the prescribed order on the daily work schedule. Upon arriving at each job site, Plaintiffs were required to check-in by telephone with DIRECTV via its dispatching system. At the end of an assigned job, Plaintiffs were required to report to DIRECTV that the installation was complete and, thereafter, worked directly with DIRECTV employees to activate the customer's service.

34.     When performing DIRECTV's work, Plaintiffs were required by Defendants to wear a uniform with DIRECTV insignia on it. Additionally, Plaintiffs were required to display DIRECTV insignia on vehicles driven to customers' homes for installations. Plaintiffs were required to purchase these uniforms and insignia, typically from Defendants.

35.     Although DIRECTV controls nearly every aspect of the technicians' work, Defendants insist that the technicians are not employees of DIRECTV, and often claim that they are not employees at all, rather that they are "independent contractors."

36.     Plaintiffs will show that the Provider Network is purposefully designed to exercise the right of control over its technician corps while avoiding the responsibility of complying with the requirements of the FLSA and applicable state employment laws.

**DIRECTV's Workforce Consolidation: Acquisition of Providers by Defendants**

37.     DIRECTV's control over its purportedly independent provider partners is integral to its fissured employment scheme. So much so that DIRECTV regularly infuses these partners with what it labels internally as "extraordinary advance payments" in order to keep their dependent operations afloat while preserving an outward appearance of independence. When litigation or other circumstances make the "independent" relationship a negative for DIRECTV, DIRECTV simply absorbs these entities by acquisition.

38.     The absorption by DIRECTV is seamless, simply a resetting of titles without the functional modifications that normally accompany an arm's length acquisition. To date, there are only three "independent" HSPs still in operation—including the named Provider Defendant. Since DIRECTV developed its HSP Network, DIRECTV or one of these three remaining HSPs has purchased at least thirteen prior HSPs.[4] Below is a description of the prior HSPs for which the Plaintiffs technicians worked and how those HSPs were ultimately acquired by DIRECTV or Multiband.

**Directech NE**

39.     Upon information and belief, Multiband Corporation acquired Directech NE, including all of its facilities. After the acquisition, Multiband Corporation conducted business out of Directech NE's locations, and personnel from Directech NE worked for

---

[4] These include AeroSat, Bruister, Bluegrass Satellite and Security, ConnecTV, Directech NE, Directech SW, DTV Home Services II, LLC, Halsted Communications, Ironwood Communications, JP&D Digital Satellite, Michigan Microtech, Mountain Satellite and Security, and Skylink.

Multiband Corporation. Many of Directech NE's employees were hired by Multiband Corporation.

40.    Upon information and belief, working conditions for installation technicians who worked for Directech NE remained substantially the same after Multiband Corporation acquired Directech NE. Likewise, technicians, including Plaintiffs, had substantially the same job(s) after Multiband Corporation acquired Directech NE. There were no broad changes to job functions, job titles, job responsibilities, and/or supervisors, and technicians' pay remained the same.

**Directech SW**

41.    Upon information and belief, Multiband Corporation acquired Directech SW, including all of its facilities. After the acquisition, Multiband Corporation conducted business out of Directech SW's locations, and personnel from Directech SW worked for Multiband Corporation. Many of Directech SW's employees were hired by Multiband Corporation.

42.    Upon information and belief, working conditions for installation technicians who worked for Directech SW remained substantially the same after Multiband Corporation acquired Directech SW. Likewise, technicians, including Plaintiffs, had substantially the same job(s) after Multiband Corporation acquired Directech SW. There were no broad changes to job functions, job titles, job responsibilities, and/or supervisors, and technicians' pay remained the same.

**DTV Home Services II, LLC**

43.    Upon information and belief, DIRECTV acquired DTV Home Services II, LLC, including all of its facilities. After the acquisition, DIRECTV conducted business out of DTV

Home Services II, LLC's locations, and personnel from DTV Home Services II, LLC worked for DIRECTV. Many of DTV Home Services II, LLC's employees were hired by DIRECTV.

44.    Upon information and belief, working conditions for installation technicians who worked for DTV Home Services II, LLC remained substantially the same after DIRECTV acquired DTV Home Services II, LLC. Likewise, technicians, including Plaintiffs, had substantially the same job(s) after DIRECTV acquired DTV Home Services II, LLC. There were no broad changes to job functions, job titles, job responsibilities, and/or supervisors, and technicians' pay remained the same.

**The Economic Reality: DIRECTV and its Provider Network Employ the Technicians**

45.    DIRECTV exerts significant control over the Providers and Plaintiffs regarding the essential terms and conditions of Plaintiffs' employment.

46.    In fact, DIRECTV is the primary, if not the exclusive, client of the Providers, and accounts for the majority, if not all, of their revenue.

47.    Defendants are, and were at all times relevant herein, in the business of, among other things, providing satellite television service to businesses and consumers. Installation and repair of satellite dishes, receivers, and related equipment is an integral part of DIRECTV's business.

48.    Although hiring is generally done at the Providers' level, DIRECTV controls the details of Plaintiffs' day-to-day work.

49.    Through the Providers, DIRECTV exercises significant control over Plaintiffs' daily work lives, including, but not limited to, control over what work Plaintiffs performed, where that work was performed, when that work was performed, and how that work was performed.

50.    Through the Providers, DIRECTV also determined whether Plaintiffs' work merited compensation, including setting the rate of pay to the Providers for the Plaintiffs' work. Providers then administered payroll and provided Plaintiffs with their paychecks.

51.    DIRECTV, through the Providers, exerted control over Plaintiffs sufficient to establish that they employed Plaintiffs. DIRECTV and the Providers constitute employers subject to liability under the FLSA.

52.    DIRECTV required Plaintiffs to hold themselves out as agents of DIRECTV.

53.    DIRECTV promulgates detailed instructions for how installations are to be completed. Plaintiffs received these instructions and performed the work as DIRECTV required. Plaintiffs were not given meaningful discretion in how they performed installations.

54.    DIRECTV publishes training materials that technicians such as Plaintiffs are required to review.

55.    DIRECTV requires that all technicians obtain a certification from the Satellite Broadcasting & Communications Association ("SBCA") before that technician may be assigned DIRECTV work orders. This requirement allows DIRECTV to mandate certain training for all technicians.

56.    DIRECTV utilizes a network of quality control personnel and field managers to oversee the work performed by Plaintiffs.

57.    DIRECTV and Providers' quality control personnel reviewed Plaintiffs' work, and Plaintiffs were subject to chargebacks and/or rollbacks based on those reviews.

58.    Defendants are each engaged in interstate commerce and, upon information and belief, Defendants each gross more than Five Hundred Thousand Dollars in revenue per year.

59.    The net effect of Defendants' policies and practices, instituted by DIRECTV and administered by Provider Defendants, is that Defendants willfully fail to pay minimum wage and overtime compensation to Plaintiffs, and willfully fail to keep accurate time records in order to save payroll costs.

### The Piece-Rate System: DIRECTV's Unlawful Payment Scheme

60.    As with other aspects of Plaintiffs' work, DIRECTV effectively controlled Plaintiffs' pay through the common policies and practices mandated in its Provider Agreements.

61.    Every Plaintiff was paid pursuant to the piece-rate payment scheme that is utilized throughout DIRECTV's network.

62.    There was no contract, memorandum, or other document between Plaintiffs and Defendants properly memorializing or explaining this pay system.

63.    Under this system, Plaintiffs were not paid for all hours they worked for Defendants. Rather, they were paid on a per-task (a/k/a piece rate) basis for satisfactorily completing a DIRECTV-approved satellite installation. The piece-rate system only pays technicians for certain enumerated "productive" tasks but fails to compensate technicians for all necessary work they perform.

64.    In addition to the certain tasks DIRECTV designated as compensable, Plaintiffs performed other work each week during the relevant time period for Defendants, such as assembling satellite dishes, driving to and between job assignments, reviewing and

receiving schedules, calling customers to confirm installations, obtaining required supplies, assisting other technicians with installations, performing required customer educations, contacting DIRECTV to report in or activate service, working on installations that were not completed, and working on "rollback" installations where Plaintiffs had to return and perform additional work on installations previously completed.

65.    Plaintiffs were not paid for these integral and indispensable tasks that were necessary to their principal activity of installing and repairing DIRECTV satellite television service.

66.    Defendants did not pay Plaintiffs' wages free and clear. Rather, Plaintiffs were subjected to "chargebacks" wherein Defendants would deduct amounts from Plaintiffs' pay if there were issues with an installation, or questions from the customer, generally up to 90 days after the customer's service was activated. The chargeback would occur for a variety of reasons, many of which were out of Plaintiffs' control, including, for example, faulty equipment, improper installation, customer calls regarding how to operate their remote control, or a customer's failure to give greater than a 95% satisfaction rating for the services provided by the technician.

67.    In addition to chargebacks, those technicians who were misclassified as independent contractors were also required to purchase supplies necessary to perform installations, such as screws, poles, concrete, and cables. Nor were these independent contractors paid an overtime premium for work done beyond 40 hours in a workweek.

68.    The required purchase of these supplies for Defendants' financial benefit reduced the wages of these technicians, including overtime pay.

69.     Plaintiffs routinely worked more than 40 hours per week for Defendants, as alleged in more detail below.

70.     Plaintiffs were not paid the overtime premium required by applicable law for work done beyond 40 hours in a given workweek.

71.     Defendants' policy and practice of imposing "chargebacks," failing to compensate Plaintiffs for all hours worked, and failing to reimburse Plaintiffs' necessary business expenses resulted in Plaintiffs routinely working more than forty hours in a work week while being denied overtime pay and being subjected to an effective wage rate below that required by applicable law.

72.     Plaintiffs intend to prove that Defendants' piece-rate pay system constitutes an effort to deliberately deny Plaintiffs earned wages and overtime compensation in violation of the FLSA.

### LITIGATION HISTORY

#### *Lang v. DIRECTV*

73.     A number of Plaintiffs in this case, including John Doucette III, Farrell Flowers, James Maddox, Scott Medford, Scott Morley, James Parks, Reginald Smith, and Anthony Vitier, previously opted in to a conditionally certified FLSA action pending in the Eastern District of Louisiana styled *Lang v. DIRECTV, et al.*, No. 10-1085-NJB.  The *Lang* case was pending as a collective action until the court, on August 30, 2013, granted the parties' joint motion decertifying the class, dismissed the opt-in plaintiffs' claims without prejudice to pursue the individual claims raised herein, and ordered the statute of limitations for each opt-in plaintiff to continue to be tolled for 60 days from the date of the order. *Lang v. DIRECTV*, Case No. 10-1085-NJB (E.D. La.) (Docs. 466, 466-1).

### *Acfalle v. DIRECTV*

74.     Within the 60 days granted by the *Lang* court, Plaintiffs John Doucette III, Farrell Flowers, James Maddox, Scott Medford, Scott Morley, James Parks, Reginald Smith, and Anthony Vitier, and also Ralph Peevyhouse, filed an action in the Central District of California on November 1, 2013. *Acfalle v. DirecTV*, Case No. 13-8108 ABC (Ex) (Doc. 1) (amended on December 23, 2013, by Doc. 9). On July 22, 2014, the court entered an order granting, in part, Defendants' Motions to Sever Claims of Plaintiffs. (Doc. 71) In that order, the court "dropped" 277 plaintiffs with FLSA-only claims, dismissing them without prejudice to refile their claims closer to their home states or where they were employed, that is, "where they performed their work." (Doc. 71, at 5, 8.)  The court tolled the statute of limitations for 90 days to permit Plaintiffs to refile their claims. (Doc. 71, at 8.)

75.     Within the 90 days granted by the *Acfalle* court, Plaintiffs John Doucette III, Farrell Flowers, James Maddox, Scott Medford, Scott Morley, James Parks, Ralph Peevyhouse, Reginald Smith, and Anthony Vitier filed the instant Complaint, joining their individual claims against Defendants.

### *Arnold v. DIRECTV*

76.     Plaintiffs James Black, Don Carpenter, Jeremy Jones, and Andrico Woods previously filed consents to become party plaintiffs in *Arnold v. DIRECTV*, No. 10-0352-JAR, originally filed on March 2, 2010, pending in the Eastern District of Missouri. Pursuant to a Proposed Case Management Plan (Doc. 200) and Amended Case Management Order (Doc. 216), the court redefined the claims into subclasses (Doc. 220, Second Amended Complaint) and entered an order which, in pertinent part, directed Plaintiffs to decertify and dismiss the claims of certain opt-in plaintiffs, including James Black, Don Carpenter,

Jeremy Jones, and Andrico Woods, without prejudice to pursue the individual claims raised herein, and ordered the statute of limitations for each opt-in plaintiff to continue to be tolled for 90 days from the date of the order. *Arnold v. DIRECTV*, Case No. 10-0325-JAR (E.D. Mo.) (Doc. 221, Notice of Voluntary Decertification).

77.    Within the 90 days granted by the *Arnold* court, James Black, Don Carpenter, Jeremy Jones, and Andrico Woods joined their individual claims in this action.

## PLAINTIFFS' CLAIMS

### John Doucette III

78.    Plaintiff John Doucette III is an individual residing in the state of Tennessee. For approximately six months in 2010, John Doucette III routinely worked more than 40 hours per week as a technician for DIRECTV primarily in the state of Tennessee, and also in Arkansas, and was unlawfully deprived of overtime compensation.

79.    In fact, John Doucette III spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

80.    Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate John Doucette III for all hours worked, and failing to reimburse John Doucette III's necessary business expenses) resulted in John Doucette III being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

81.    John Doucette III brings claims against DIRECTV.

### Farrell Flowers

82.    Plaintiff Farrell Flowers is an individual residing in the state of Tennessee. Between approximately January 2011 and April 2011, Farrell Flowers routinely worked

more than 40 hours per week as a technician for DIRECTV and DTV Homes Services II, LLC primarily in the state of Tennessee, and also in Arkansas, and was unlawfully deprived of overtime compensation.

83.    In fact, Farrell Flowers spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

84.    Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Farrell Flowers for all hours worked, and failing to reimburse Farrell Flowers' necessary business expenses) resulted in Farrell Flowers being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

85.    Farrell Flowers brings claims against DIRECTV.

**James Maddox**

86.    Plaintiff James Maddox is an individual residing in the state of Tennessee. During 2011, James Maddox routinely worked more than 40 hours per week as a technician for DIRECTV and DTV Homes Services II, LLC in the state of Tennessee, and was unlawfully deprived of overtime compensation.

87.    In fact, James Maddox spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

88.    Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate James Maddox for all hours worked, and failing to reimburse James Maddox's necessary business expenses) resulted in James Maddox being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

89.    James Maddox brings claims against DIRECTV.

**Scott Medford**

90.    Plaintiff Scott Medford is an individual residing in the state of Arkansas. Between approximately 2009 and June 2014, Scott Medford routinely worked more than 40 hours per week as a technician for DIRECTV, Directech SW, and Multiband primarily in the state of Tennessee, and also in Arkansas, Mississippi, and Louisiana, and was unlawfully deprived of overtime compensation.

91.    In fact, Scott Medford spent approximately 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

92.    Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Scott Medford for all hours worked, and failing to reimburse Scott Medford's necessary business expenses) resulted in Scott Medford being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

93.    Scott Medford brings claims against DIRECTV and Multiband.

**Scott Morely**

94.    Plaintiff Scott Morely is an individual residing in the state of Tennessee. Between approximately April 2010 and March 2011, Scott Morely routinely worked more than 40 hours per week as a technician for DIRECTV and DTV Homes Services II, LLC in the state of Tennesee, and was unlawfully deprived of overtime compensation.

95.    In fact, Scott Morely spent approximately 50 hours per week performing tasks for the benefit of Defendants, many unpaid.

96.     Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Scott Morely for all hours worked, and failing to reimburse Scott Morely's necessary business expenses) resulted in Scott Morely being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

97.     Scott Morely brings claims against DIRECTV.

**James Parks**

98.     Plaintiff James Parks is an individual residing in the state of Tennessee. Between approximately October 2008 and February 2014, James Parks routinely worked more than 40 hours per week as a technician for DIRECTV, Directech NE, and Multiband primarily in the state of Tennessee, and also in Arkansas, Mississippi, and Alabama, and was unlawfully deprived of overtime compensation.

99.     In fact, James Parks spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

100.    Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate James Parks for all hours worked, and failing to reimburse James Parks' necessary business expenses) resulted in James Parks being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

101.    James Parks brings claims against DIRECTV and Multiband.

**Ralph Peevyhouse**

102.    Plaintiff Ralph Peevyhouse is an individual residing in the state of Tennessee. Between approximately 2005 and November 2011, Ralph Peevyhouse routinely worked

more than 40 hours per week as a technician for DIRECTV and Multiband in the state of Tennessee, and was unlawfully deprived of overtime compensation.

103.    In fact, Ralph Peevyhouse spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

104.    Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Ralph Peevyhouse for all hours worked, and failing to reimburse Ralph Peevyhouse's necessary business expenses) resulted in Ralph Peevyhouse being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

105.    Ralph Peevyhouse brings claims against DIRECTV and Multiband.

**Reginald Smith**

106.    Plaintiff Reginald Smith is an individual residing in the state of Tennessee. Between approximately October 2009 and September 2011, Reginald Smith routinely worked more than 40 hours per week as a technician for DIRECTV, Directech SW, and Multiband in the state of Tennessee, and was unlawfully deprived of overtime compensation.

107.    In fact, Reginald Smith spent approximately 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

108.    Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Reginald Smith for all hours worked, and failing to reimburse Reginald Smith's necessary business expenses) resulted in Reginald Smith being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

109.    Reginald Smith brings claims against DIRECTV and Multiband.

**Anthony Vitier**

110.    Plaintiff Anthony Vitier is an individual residing in the state of Tennessee. Between approximately July 2010 and November 2010, Anthony Vitier routinely worked more than 40 hours per week as a technician for DIRECTV and DTV Home Services II, LLC in the state of Tennessee, and was unlawfully deprived of overtime compensation.

111.    In fact, Anthony Vitier spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

112.    Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Anthony Vitier for all hours worked, and failing to reimburse Anthony Vitier's necessary business expenses) resulted in Anthony Vitier being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

113.    Anthony Vitier brings claims against DIRECTV.

**James Black**

114.    Plaintiff James Black is an individual residing in the state of Tennessee. Between approximately February 2011 and August 2012, James Black routinely worked more than 40 hours per week as a technician for DIRECTV and DTV Home Services II, LLC in the state of Tennessee, and was unlawfully deprived of overtime compensation.

115.    In fact, James Black spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

116.    Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate James Black for all hours worked, and failing to

reimburse James Black's necessary business expenses) resulted in James Black being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

117.    James Black brings claims against DIRECTV.

**Don Carpenter**

118.    Plaintiff Don Carpenter is an individual residing in the state of Tennessee. Between approximately August 2009 and December 2009, Don Carpenter routinely worked more than 40 hours per week as a technician for DIRECTV and Directech SW in the state of Tennessee, and was unlawfully deprived of overtime compensation.

119.    In fact, Don Carpenter spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

120.    Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Don Carpenter for all hours worked, and failing to reimburse Don Carpenter's necessary business expenses) resulted in Don Carpenter being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

121.    Don Carpenter brings claims against DIRECTV.

**Jeremey Jones**

122.    Plaintiff Jeremy Jones is an individual residing in the state of Tennessee. Between approximately May 2012 and October 2012, Jeremy Jones routinely worked more than 40 hours per week as a technician for DIRECTV and Multiband in the state of Tennessee, and was unlawfully deprived of overtime compensation.

123.    In fact, Jeremy Jones spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

124.    Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Jeremy Jones for all hours worked, and failing to reimburse Jeremy Jones' necessary business expenses) resulted in Jeremy Jones being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

125.    Jeremy Jones brings claims against DIRECTV and Multiband.

**Andrico Woods**

126.    Plaintiff Andrico Woods is an individual residing in the state of Tennessee. Between approximately September 2009 and June 2011, Andrico Woods routinely worked more than 40 hours per week as a technician for DIRECTV and Multiband primarily in the state of Tennessee, and also in Mississippi, and was unlawfully deprived of overtime compensation.

127.    In fact, Andrico Woods spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

128.    Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Andrico Woods for all hours worked, and failing to reimburse Andrico Woods' necessary business expenses) resulted in Andrico Woods being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

129.    Andrico Woods brings claims against DIRECTV.

## COUNT I

### Violation of the Fair Labor Standards Act of 1938

*By each Plaintiff individually against Plaintiff's previously identified joint-employer-Defendant(s)*

130.    Plaintiffs re-allege all allegations set forth above.

131.    At all times material herein, Plaintiffs have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq.*

132.    The FLSA regulates, among other things, the payment of overtime pay by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. § 207(a)(1).

133.    The FLSA also regulates, among other things, the payment of minimum wage by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce.  29 U.S.C. § 206(a).

134.    Defendants are subject to the minimum wage and overtime pay requirements of the FLSA because they are enterprises engaged in interstate commerce and their employees are engaged in commerce.

135.    Defendants violated the FLSA by failing to pay all minimum wage and overtime wages due to Plaintiffs, failing to properly calculate Plaintiffs' regular rate of pay for determining the overtime premium pay owed, and improperly deducting money from Plaintiffs' pay.

136.    As to defendant DIRECTV, Plaintiffs are entitled to damages equal to the mandated minimum wage and overtime premium pay within the three years preceding the

filing their consent to join forms in the *Lang* or *Arnold* litigation, plus periods of equitable tolling, because DIRECTV acted willfully and knew or showed reckless disregard in their violation of the FLSA.

137.    As to the Provider Defendant against which each Plaintiff makes a claim, Plaintiffs are entitled to damages equal to the mandated minimum wage and overtime premium pay within the three years preceding the filing their original complaint in this action, *i.e.*, November 1, 2013,[5] plus periods of equitable tolling, because the Provider Defendant acted willfully and knew or showed reckless disregard in its violation of the FLSA.

138.    Pursuant to Defendants' policies and practices, Defendants willfully violated the FLSA by refusing and failing to pay Plaintiffs overtime and minimum wages. In the course of perpetrating these unlawful practices, Defendants willfully failed to keep accurate records of all hours worked by, compensation paid to, and expenses incurred by Plaintiffs.

139.    Defendants have acted neither in good faith nor with reasonable grounds to believe that their actions and omissions were not a violation of the FLSA. As a result thereof, Plaintiffs are each entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid wages as described by Section 16(b) of the FLSA, codified at 29 U.S.C. § 216(b). Alternatively, should the Court find Defendants acted in good faith in failing to pay Plaintiffs minimum wage and overtime compensation, Plaintiffs are each entitled to an award of prejudgment interest at the applicable legal rate.

140.    As a result of these violations of the FLSA's minimum wage and overtime pay provisions, compensation has been unlawfully withheld from Plaintiffs by Defendants.

---

[5] Or from the date of filing this complaint for *Arnold* Plaintiffs James Black, Don Carpenter, Jeremy Jones, and Andrico Woods.

Accordingly, pursuant to 29 U.S.C. § 216(b), Defendants are liable for the unpaid minimum wages and overtime premium pay along with an additional amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

141.    Plaintiffs request relief as described below and as permitted by law.

**WHEREFORE**, Plaintiffs demand a jury trial for all issues so triable, and request the Court enter judgment for Plaintiffs individually and:

a.    Award damages for unpaid minimum wages and unpaid overtime wages under 29 U.S.C. § 216(b);

b.    Award liquidated damages under 29 U.S.C. § 216(b);

c.    Award reasonable attorneys' fees under the Fair Labor Standards Act;

d.    Award costs of suit under 29 U.S.C. § 216(b);

e.    Award pre-judgment interest;

f.    Award damages including wages or other compensation lost as a result of the misclassification; and

g.    Grant any further relief that the Court may deem just and equitable.

Dated: October 19, 2014

Respectfully submitted,

**LAW OFFICE OF WENDELL L. HOSKINS II**

404 Ward Avenue
Post Office Box 1115
Caruthersville, Missouri 63830
Phone: 573-333-2600
Fax: 573-333-2041
Wendell@WendellHoskins.com
Mary@WendellHoskins.com

/s/  Mary K. Walker

WENDELL L. HOSKINS II
Tennessee Bar No. 17763
MARY K. WALKER
Tennessee Bar No. 024773
Local Counsel for Plaintiffs

**STUEVE SIEGEL HANSON LLP**

George A. Hanson, *PHV Forthcoming*
MO Bar No. 43450
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone:    816-714-7100
Facsimile:    816-714-7101
Email:  hanson@stuevesiegel.com

Ryan D. O'Dell, *PHV Forthcoming*
CA Bar No. 290802
500 West C Street, Suite 1750
San Diego, California 92101
Telephone:    619-400-5826
Facsimile:    619-400-5832
Email: odell@stuevesiegel.com

**LEAR WERTS LLP**

Bradford B. Lear, *PHV Forthcoming*
Mo. Bar No. 53204
Email: lear@learwerts.com
Todd C. Werts, *PHV Forthcoming*
Mo. Bar No. 53288
Email: werts@learwerts.com
2003 W. Broadway, Ste. 107
Columbia, Missouri 65203
Telephone:    573-875-1991
Facsimile:    573-875-1985

*Attorneys for Plaintiffs*