IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION
_____

| | |
|---|---|
| JOHN DOUCETTE III, FARRELL FLOWERS, JAMES MADDOX, SCOTT MEDFORD, SCOTT MORLEY, JAMES PARKS, RALPH PEEVYHOUSE, REGINALD SMITH, ANTHONY VITIER, JAMES BLACK, DON CARPENTER, JEREMY JONES, and ANDRICO WOODS,<br><br>  Plaintiffs,<br><br> v.<br><br>DIRECTV, INC., DIRECTV, LLC, and MULTIBAND CORP.,<br><br>  Defendants. | No. 2:14-cv-02800-STA-tmp |

_____

**ORDER GRANTING IN PART AND DENYING IN PART
DIRECTV'S MOTION TO DISMISS
AND DENYING MULTIBAND'S MOTION TO DISMISS**
_____

Before the Court are two Motions to Dismiss.  First, Defendant Multiband Corporation ("Multiband") filed its Motion to Dismiss on January 5, 2015.  (ECF No. 29).  The same day, DIRECTV, Inc. and DIRECTV, LLC (collectively, "DIRECTV") filed their Motion to Dismiss. (ECF No. 31).  After the Court granted an extension of time to respond, the thirteen Plaintiffs filed their combined Response in Opposition to the Motions on February 12, 2015.  (ECF No. 37).  Multiband and DIRECTV both filed replies on March 2, 2015.  (ECF Nos. 39, 40).  For the reasons stated below,  DIRECTV'S Motion to Dismiss is **GRANTED IN PART and DENIED IN PART**, while Multiband's Motion to Dismiss is **DENIED**.

1

## BACKGROUND

The Plaintiffs filed their Complaint on October 19, 2014, alleging violations of the Fair Labor Standards Act ("FLSA").[1] For the purposes of ruling on the Motions to Dismiss, the Court assumes the truth of the factual allegations in the Plaintiffs' Complaint. According to the Complaint, Plaintiffs were technicians who installed and repaired DIRECTV satellite television services. (Pls.' Compl. ¶ 1, ECF No. 1). Each Plaintiff worked directly for a Home Service Provider ("HSP"). (*Id.* ¶¶ 24–26). Five Plaintiffs in this action bring claims against one of those HSPs, Multiband. During all relevant times, each HSP contracted primarily, if not exclusively, with DIRECTV for technician services. (*Id.* ¶ 27).

DIRECTV issues each HSP a Provider Agreement describing the policies, procedures, performance standards, and payment methods that DIRECTV requires the HSPs to follow. (*Id.* ¶¶ 29–30). The policies found in the Provider Agreements mandate that technicians wear DIRECTV shirts, display the DIRECTV insignia on their vehicles, and present customers with DIRECTV ID cards. (*Id.* ¶¶ 31, 34). For each job, DIRECTV assigns technicians a scope of work through a work order, delivered electronically to technicians by DIRECTV's dispatch system. (*Id.* ¶ 32). DIRECTV requires technicians to follow particularized methods and standards of installation to ensure that all work is done uniformly and to DIRECTV's desired level of quality. (*Id.* ¶ 31). Technicians were also required to call DIRECTV at the beginning and upon completion of each assigned job. (*Id.* ¶ 33). Thus, Plaintiffs assert that, due to the amount of control asserted by DIRECTV on the technicians' work, Plaintiffs are employees under the FSLA and not, as DIRECTV claims, independent contractors. (*Id.* ¶¶ 35–36). Plaintiffs allege that DIRECTV purposely established the HSP network to exercise the right of

---

[1] 29 U.S.C. § 201 *et seq.*

control over Plaintiffs while avoiding any responsibilities as an employer under the FLSA. (*Id.* ¶ 36).

Plaintiffs' complaint states that Defendants, through a "piece-rate" pay system and "chargebacks" mandated in the DIRECTV Provider Agreement, willfully failed to pay minimum wage and overtime compensation to Plaintiffs. (*Id.* ¶ 59). Under the piece-rate system, Plaintiffs were not paid for the hours they worked but only for the completion of certain enumerated, "productive" tasks. (*Id.* ¶ 63). Plaintiffs claim that the piece-rate system does not compensate technicians for other tasks that are necessary to successfully perform their jobs (*Id.* ¶ 63–65), and because of the unpaid work they performed each week, they consistently worked more than forty hours per week. (*Id.* ¶ 71). Plaintiffs also state that they were never paid the premium overtime payment required under the FLSA for work performed beyond forty hours in a given workweek. (*Id.* ¶ 67, 70–71).

Plaintiffs also allege that technicians' pay was subject to chargebacks—amounts deducted from their pay if there were any issues with an installation or questions from customers. (*Id.* ¶ 66). DIRECTV required technicians to buy many of the supplies necessary to perform their tasks but were never compensated for these purchases. (*Id.* ¶ 67). Plaintiffs allege that the combination of the failure to compensate Plaintiffs for overtime performed, the imposition of chargebacks, and the failure to reimburse Plaintiffs for necessary business expenses resulted in an effective wage rate below minimum wage. (*Id.* ¶ 71).

## STANDARD OF REVIEW

A defendant may move to dismiss a claim "for failure to state a claim upon which relief can be granted" under Federal Rule of Civil Procedure 12(b)(6). When considering a Rule 12(b)(6) motion, the Court must treat all of the well-pleaded allegations of the pleadings as true

and construe all of the allegations in the light most favorable to the non-moving party.[2]  Legal conclusions or unwarranted factual inferences, however, need not be accepted as true.[3]  "To avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all material elements of the claim."[4]  Under Rule 8, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[5]  Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."[6]  In order to survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face."[7]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[8]

---

[2] *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Saylor v. Parker Seal Co.*, 975 F.2d 252, 254 (6th Cir. 1992).

[3] *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

[4] *Wittstock v. Mark a Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003).

[5] Fed. R. Civ. P. 8(a)(2).

[6] *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  *See also Reilly v. Vadlamudi*, 680 F.3d 617, 622 (6th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555).

[7] *Twombly*, 550 U.S. at 555, 570.

[8] *Iqbal*, 556 U.S. at 678.

## ANALYSIS

In support of their Motions, the Defendants argue three bases upon which the Complaint should be dismissed. First, DIRECTV argues that it is not an "employer" as defined by the FLSA, and therefore it cannot be liable. Second, both DIRECTV and Multiband argue that at least some of the Plaintiffs' claims are barred by the FLSA's statute of limitations. Finally, both DIRECTV and Multiband contend that the Plaintiffs have not alleged facts stating a plausible claim under the FLSA.

### I. "Employers" and "Employees" Under the FLSA

DIRECTV argues that Plaintiffs were not employees of DIRECTV, but rather independent contractors, and therefore do not have a valid claim under the FLSA. The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee"[9] and "employee" as "any individual employed by an employer."[10] The Act also defines "employ" as "to suffer or permit to work."[11] First, the Court notes that "[t]he FLSA's definition of 'employee' is strikingly broad and 'stretches the meaning of "employee" to cover some parties who might not qualify as such under a strict application of traditional agency law principles.'"[12] When determining whether workers are employees under the FLSA, the Court must look beyond mere labels and contractual agreements: "employees are those who as a

---

[9] 29 U.S.C. § 203(d).

[10] *Id.* § 203(e)(1).

[11] *Id.* § 203(g).

[12] *Keller v. Miri Microsystems LLC*, No. 14-1430, 2015 U.S. App. LEXIS 4887, at *2 (6th Cir. Mar. 26, 2015) (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992)).

matter of economic reality are dependent upon the business to which they render service."[13] In applying this economic-reality test, the Court must analyze the following factors:

> "1) the permanency of the relationship between the parties; 2) the degree of skill required for the rendering of the services; 3) the worker's investment in equipment or materials for the task; 4) the worker's opportunity for profit or loss, depending upon his skill; . . . 5) the degree of the alleged employer's right to control the manner in which the work is performed [; and] . . .
>
> [6)] whether the service rendered is an integral part of the alleged employer's business."[14]

The Court may also consider other factors, such as the defendant's authority to hire or fire the plaintiff and whether the defendant maintains the plaintiff's employment records.[15] No one factor is determinative, but rather "'[a] central question is the worker's economic dependence upon the business for which he is laboring.'"[16]

Whether the plaintiff worker has a continuous and indefinite relationship with the defendant company is important to the first factor.[17] Employees typically work for only one employer, while independent contractors usually have a fixed period of employment and move

---

[13] *Donovan v. Brandel*, 736 F.2d 1114, 1116 (6th Cir. 1984) (quoting *Dunlop v. Carriage Carpet Co.*, 548 F.2d 139, 145 (6th Cir. 1977)); *Imars v. Contractors Mfg. Servs., Inc.*, No. 97-3543, 1998 U.S. App. LEXIS 21073, at *5 (6th Cir. Aug. 24, 1998) (rejecting "contractual intention as a dispositive consideration"); *see Keller*, 2015 U.S. App. LEXIS 4887, at *10 (noting that the lack of a contract between the parties does not factor into analysis).

[14] *Keller*, 2015 U.S. App. LEXIS 4887, at *8 (alterations in original) (quoting *Donovan v. Brandel*, 736 F.2d 1114, 1117 & n.5 (6th Cir. 1984)).

[15] *Id.* (quoting *Ellington v. City of E. Cleveland*, 689 F.3d 549, 555 (6th Cir. 2012)).

[16] *Id.* (quoting *Donovan*, 736 F.2d at 1120).

[17] *Id.*; *see Baker v. Flint Eng'g & Constr. Co.*, 137 F.3d 1436, 1442 (10th Cir. 1998). *But see* 29 C.F.R. § 791.2(a) ("A single individual may stand in the relation of an employee to two or more employers at the same time under the Fair Labor Standards Act of 1938.").

from principal to principal.[18] The court may also look to the "length and regularity of the working relationship between the parties."[19] Most relevant here is the degree of control that DIRECTV exercised over the amount of time the Plaintiffs worked.[20] The Plaintiffs allege that they received daily work schedules from DIRECTV. (Pls.' Compl. ¶ 33). The Court also makes the reasonable inference that the Plaintiffs spent the majority of their time working exclusively for DIRECTV: DIRECTV was the primary, if not the sole, client of the HSPs for which Plaintiffs worked. DIRECTV is the source of nearly all of the HSPs revenue, and, in turn, the Plaintiffs' pay. (*Id.* ¶¶ 27, 46).

In analyzing the second factor—the degree of skill required for the rendering of services—the Court looks to whether a plaintiff's profits increased because of the "initiative, judgment[,] or foresight of the typical independent contractor," or whether plaintiff's work "was more like piecework."[21] Relevant inquiries include how much skill the worker has, how much training was needed to acquire the skills, and who provided the training.[22] Yet again, DIRECTV controlled the skills required. It issues training manuals to technicians and requires technicians to obtain certification from the Satellite Broadcasting & Communications Association ("SBCA"). (*Id.* ¶ 53–55). Although the Plaintiffs do not allege that DIRECTV trained the technicians, the Provider Agreements specify the standards for installation and the methods by

---

[18] *Keller*, 2015 U.S. App. LEXIS 4887, at *8; *see Baker*, 137 F.3d at 1442.

[19] *Keller*, 2015 U.S. App. LEXIS 4887, at *8; *see Baker*, 137 F.3d at 1442.

[20] *Keller*, 2015 U.S. App. LEXIS 4887, at *10 (using control over number of days worked per week and how many jobs taken per day to analyze permanency of relationship).

[21] *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947); *Keller*, 2015 U.S. App. LEXIS 4887, at *13.

[22] *Keller*, 2015 U.S. App. LEXIS 4887, at *13–14.

which the technicians must install DIRECTV's products. (*Id.* ¶ 31). Furthermore, the allegations of the Complaint regarding the structure of the Provider Agreements make reasonable the inference that DIRECTV did not select the technicians "on the basis of anything other than availability and location."[23] The Plaintiffs allege that they "were not given meaningful discretion in how they performed installations," and therefore, the Plaintiffs' profits presumably could not increase based on innovation or independence. (*Id.* ¶ 53).

The next factor the court must weigh is the worker's investment in equipment or materials for the worker's usual tasks. "The capital investment factor is most significant if it reveals that the worker performs a specialized service that requires a tool or application which he has mastered or that the worker is simply using implements of the [company] to accomplish the task."[24] Here, the Plaintiffs do admit that they "were required to purchase supplies necessary to perform installations, such as screws, poles, concrete, and cables." (*Id.* ¶ 67). But the Court must "compare the worker's investment in the equipment to perform his job with the company's total investment."[25] The Plaintiffs' investment in the materials necessary does not reveal economic independence. DIRECTV still allegedly controlled every aspect of the job through its agreements with HSPs: schedules, methods, standards, and pay.

Fourth, the Court considers the worker's opportunity to increase profits based on his technical or management skills. This factor contemplates the degree of control the worker maintains in business decisions such as what geographical territory to service, how many and

---

[23] *Keller*, 2015 U.S. App. LEXIS 4887, at *15.

[24] *Donovan v. Brandel*, 736 F.2d 1114, 1119 (6th Cir. 1984).

[25] *Keller*, 2015 U.S. App. LEXIS 4887, at *16–17.

what kind of jobs to accept, and the ability to hire additional employees to complete more jobs.[26] The Plaintiffs allege that DIRECTV gave the Plaintiffs daily schedules, directed them to specific job sites, and controlled how the work was to be done. (*Id.* ¶ 33, 49). Therefore, the Plaintiffs could not choose which jobs to perform or increase their profits by technical skill.

For the fifth factor, the Court looks to the business's level of supervision over the worker, its control over the day-to-day work, the worker's ability to refuse work assignments, and the worker's ability to do work for other companies.[27] This factor, above all others, weighs heavily in the Plaintiffs' favor. DIRECTV allegedly asserted total control over the aspects of the Plaintiffs' workdays. The Plaintiffs' duties under DIRECTV's policies left almost no discretion and rendered them economically dependent on DIRECTV. Through its Provider Agreements with the HSPs, DIRECTV controlled the way Plaintiffs were paid, the uniforms Plaintiffs wore, and Plaintiffs' work schedules. (*Id.* ¶ 32, 34, 50). DIRECTV assigned the jobs, set the order of completion of daily jobs, and required the technicians to check-in by telephone upon arrival and then again upon completion of each job. (*Id.* ¶ 33). It also required the technicians to drive a DIRECTV-branded vehicle and wear a DIRECTV uniform. (*Id.* ¶ 1). No matter where the technician performed or which intermediary the technician ostensibly worked for, "each technician's essential job duties [were] virtually identical" because they were controlled by DIRECTV and its policies through the Provider Network. (*Id.* ¶ 31). DIRECTV also has a network of quality control personnel and field managers who oversee the work performed by Plaintiffs. (*Id.* ¶ 56–57).

---

[26] *See Keller*, 2015 U.S. App. LEXIS 4887, at *22.

[27] *See id.* at *27.

And finally, in analyzing the sixth factor, "[t]he more integral the worker's services are to the business, then the more likely it is that the parties have an employer-employee relationship."[28] The Plaintiffs are installation technicians for DIRECTV. DIRECTV could not provide its satellite-television services without technicians to install its products. For purposes of this motion, taking the complaint as a whole and in the light most favorable to the Plaintiffs, the Plaintiffs have alleged facts sufficient to show that Plaintiffs are "employees" as defined by the FLSA. They have provided detailed allegations as to the control DIRECTV had over them and their dependent relationship with DIRECTV.

## II. Timeliness of Claims

### A. Pleading Willfulness

Both Multiband and DIRECTV argue that the some of the Plaintiffs' claims are barred by the FLSA's standard, two-year statute of limitations. They contend that the Plaintiffs have not sufficiently alleged "willfulness," which would extend the FLSA's statute of limitations to three years. As the Sixth Circuit has explained, "[u]nder the FLSA, a lawsuit to recover unpaid compensation must 'be commenced within two years after the cause of action accrued,' unless the cause of action arose 'out of a willful violation,' in which case the lawsuit must 'be commenced within three years after the cause of action accrued.'"[29] The cause of action accrues, "as a general rule, 'at each regular payday immediately following the work period during which the services were rendered for which the wage or overtime compensation is claimed.'"[30]

---

[28] *Keller*, 2015 U.S. App. LEXIS 4887, at *31–32 (citing *Keeton v. Time Warner Cable, Inc.*, No. 2:09-CV-1085, 2011 U.S. Dist. LEXIS 71472, at *6 (S.D. Ohio July 1, 2011)).

[29] *Hughes v. Region VII Area Agency on Aging*, 542 F.3d 169, 187 (6th Cir. 2008) (quoting 29 U.S.C. § 255(a)).

[30] *Id.* (quoting *Archer v. Sullivan Cnty.*, Nos. 95-5214, 95-5215, 1997 U.S. App. LEXIS 33052, at *6 (6th Cir. Nov. 14, 1997)).

An FLSA violation is willful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute."[31]  At the motion-to-dismiss stage, the Plaintiffs must only state a plausible claim that the alleged violations were willful. Rule 9(b) allows a plaintiff to plead "[m]alice, intent, knowledge, and other conditions of a person's mind . . . generally,"[32] but the Rule "does not give a plaintiff license to 'plead the bare elements of his cause of action . . . and expect his complaint to survive a motion to dismiss.'"[33] Applying this standard to a "willful" claim under the Family Medical Leave Act, the Sixth Circuit noted that "although conditions of a person's mind may be alleged generally, 'the plaintiff still must plead facts about the defendant's mental state, which, accepted as true,'" make the allegation plausible.[34]

While the Complaint contains some conclusory references to the Defendants' "willful" conduct, it also alleges, in great detail, a system by which the Defendants deliberately attempted to shirk their responsibilities to employees by misclassifying them as independent contractors.  In addition to several allegations of "willfulness," the Plaintiffs state that the Provider Network created by the Defendants "is purposefully designed to exercise the right of control over its technician corps while avoiding the responsibility of complying with the requirements of the FLSA and applicable state employment laws." (Pls.' Compl. ¶ 36).  Furthermore, after a lengthy

---

[31] *Elwell v. Univ. Hosps. Home Care Servs.*, 276 F.3d 832, 842 (6th Cir. 2002).

[32] Fed. R. Civ. P. 9(b).

[33] *Katoula v. Detroit Entm't, LLC*, 557 F. App'x 496, 498 (6th Cir. 2014) (quoting *Iqbal v. Ashcroft*, 556 U.S. 662, 678–79 (2009)) (analyzing FMLA claim of "willfulness" under *Twombly* and *Iqbal*).

[34] *Id.* (quoting *Republic Bank & Trust Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247 (6th Cir. 2012)).

and specific recitation of the Defendants' policies, the Plaintiffs claim that "[t]he net effect of Defendants' policies and practices . . . is that the Defendants willfully fail to pay minimum wage and overtime compensation to Plaintiffs, and willfully fail to keep accurate time records in order to save payroll costs." (*Id.* ¶ 36). The entirety of the Plaintiffs' Complaint is based upon their claim that they were intentionally misclassified as independent contractors even though they "meet the definition . . . of an 'employee' under the Fair Labor Standards Act." (*Id.* ¶ 1; *see id.*¶ 2 (stating that multi-party business arrangements like the one employed by Defendants "shirk compliance with the FLSA")). The Defendants argue that "attempting to label *everything* in the Complaint as willful" is unavailing, but detailed allegations about the Defendants' implemented policies allegedly intended to evade the FLSA "do[es] more than make the conclusory assertion that a defendant acted willfully."[35] The Complaint presents facts, taken as true, that make the allegation of willfulness plausible.[36]

### B. Timeliness

Having determined that the Plaintiffs have stated a claim for a willful violation under the FLSA, the Court must determine whether any of the Plaintiffs' claims are time-barred by the three-year statute of limitations. First, each Plaintiff's cause of action accrues "at each regular payday immediately following the work period during which the services were rendered for which the wage or overtime compensation is claimed."[37] The Court will not recite the lengthy

---

[35] *Katoula*, 557 F. App'x at 498.

[36] The Court only holds that the Plaintiffs have sufficiently alleged a willful violation. Ultimately, the Plaintiffs will have to prove a willful violation, and the final determination on that issue may influence the timeliness of certain Plaintiffs' claims.

[37] *Hughes v. Region VII Area Agency on Aging*, 542 F.3d 169, 187 (quoting *Archer v. Sullivan Cnty.*, Nos. 95-5214, 95-5215, 1997 U.S. App. LEXIS 33052, at *6 (6th Cir. Nov. 14, 1997)).

history of each Plaintiff's litigation against DIRECTV and/or Multiband. The litigation history implicates doctrines of tolling, as some Plaintiffs brought claims which were dismissed without prejudice in previous actions. In those cases, courts extended certain Plaintiffs' time to file the same action in another court. At this stage, the Court will not attempt to decipher the effect of each previous court's ruling on how long each Plaintiff had to refile his action against either Multiband or DIRECTV. The parties occasionally address the effect of those rulings in their briefs, but those short statements are often contained in footnotes and lack citation. Thus, at this stage, the Court only rules that each Plaintiff is entitled to a three-year look-back period from the date of this Complaint or his filing of consent in a previous action. Those Plaintiffs who filed a consent in a previous action are also entitled to periods of tolling based on previous court orders, but only so far as a court order relates to a specific Plaintiff and that Plaintiff's claims against a specific Defendant. The Plaintiffs may not attempt to latch the timeliness of their claims to other Plaintiffs who have diligently pursued their own claims.

With these few rules as guides, it is clear that one Plaintiff's claims are time-barred in whole. Don Carpenter, who brings his claims against DIRECTV, alleges that he worked in excess of 60 hours per week between August 2009 and December 2009. (Pls.' Compl. ¶¶ 118–121). Thus, at the latest, Carpenter had until January 1, 2013, to file a complaint for the very last portion of unpaid overtime or illegal wage. According to the Complaint, Carpenter filed his consent to become a party plaintiff in *Arnold v. DIRECTV* in the Eastern District of Missouri. The *Arnold* case was originally filed on March 2, 2010, but Carpenter did not file his consent to the action until February 8, 2013. Regardless of that court's decision regarding tolling upon dismissal, Carpenter's claims were not timely within the three-year statute of limitations. Any

13

tolling period imposed could not help Carpenter, whose claims were already time-barred. Therefore, Plaintiff Don Carpenter's claims are DISMISSED.

### III. FLSA Pleading Standard

Multiband and DIRECTV make nearly identical arguments suggesting that the Plaintiffs "have failed to make any factual allegations supporting an inference that Defendants' purported policy of paying on a piece-rate basis violated the FLSA, that Defendants' unspecified method of calculating the regular rate of pay was unlawful, or that in any specific week they worked overtime for which they were not compensated."[38] Federal courts across the country diverge on the application of *Twombly* and *Iqbal* to claims brought under the FLSA.[39] Generally, some courts require a Plaintiff to approximate the amount of hours worked and the amount of unpaid overtime wages in a given workweek to survive a motion to dismiss, while others reject such requirements.[40]

The Ninth Circuit analyzed existing case law and agreed with the rationale of the First, Second, and Third Circuits, determining that a plaintiff must allege a given workweek in which he worked over 40 hours.[41] This allegation would normally lead to a mathematical calculation of unpaid overtime wages. The Ninth Circuit held that "in order to survive a motion to dismiss, a plaintiff asserting a claim to overtime payments must allege that she worked more than forty

---

[38] Multiband's Mem. in Supp. of Mot. Dismiss 14, ECF No. 30; DIRECTV's Mem. in Supp. Mot. Dismiss 12–13, ECF No. 32.

[39] *See Landers v. Quality Commc'ns, Inc.*, No. 12-15890, 2015 U.S. App. LEXIS 1290, at *7 n.1 (9th Cir. Jan. 26, 2015) (collecting cases with different standards).

[40] *See id.*

[41] *Id.* at *16; *see also Pruell v. Caritas Christi*, 678 F.3d 10, 13 (1st Cir. 2012); *Lundy v. Catgikuc Geaktg System of Long Island, Inc.*, 711 F.3d 106, 114 (2d Cir. 2013); *Davis v. Abington Memorial Hosp.*, 765 F.3d 236, 242–43 (3d Cir. 2014).

hours in a given workweek without being compensated for the overtime hours worked during that workweek."[42] The court "decline[d] to make the approximation of overtime hours the *sine qua non* of plausibility for claims brought under the FLSA,"[43] but opined that an FLSA plaintiff "must allege that she worked more than forty hours in a given workweek without being compensated for the hours worked in excess of forty during that week."[44]

Other courts—including those within this circuit—have determined that a plaintiff need not state these specific facts to survive a motion to dismiss. For example, a court in this district held that "[a] simple statement that the employer failed to pay overtime and/or minimum wage to covered employees or failed to keep payroll records is all that is required to establish a claim of a [sic] FLSA violation."[45] Another rejected a motion to dismiss even though the plaintiff did not allege that she worked in excess of forty hours.[46] Often, courts rejecting more specific pleading standards rely on the FLSA's mandate that employers, rather than employees, keep records of wages, hours, and other employment data.[47] Moreover, even if this Court adopted a more

---

[42] *See Landers*, 2015 U.S. App. LEXIS 1290, at *16.

[43] *Id.* at *17 (noting further that "[a]fter all, most (if not all) of the detailed information concerning a plaintiff-employee's compensation and schedule is in the control of the defendants").

[44] *Id.*

[45] *Kutzback v. LMS Intellibound, LLC*, No. 13-cv-2767-JTF-cgc, 2014 U.S. Dist. LEXIS 126941, at *19 (W.D. Tenn. Sept. 5, 2014).

[46] *Carter v. Jackson-Madison Cnty. Hosp. Dist.*, No. 1:10-cv-01155-JDB-egb, 2011 U.S. Dist. LEXIS 35163, at *17–19 (W.D. Tenn. Mar. 31, 2011).

[47] *See id.* (noting that the plaintiff could search employer records in discovery "to determine the specific weeks in which she exceeded forty hours but was not compensated for overtime"); *Noble v. Serco, Inc.*, No. 3:08-76-DCR, 2009 U.S. Dist. LEXIS 54632, at *2 (E.D. Ky. June 25, 2009) ("[I]t is not surprising that such facts are not provided by in the Complaint.

specific pleading standard for general FLSA claims, in a misclassification FLSA case like this one, plaintiffs should not be required to state a specific workweek if they allege that they "*always* worked more than forty hours per week but were paid a flat wage."[48]

Rule 8 does not require detailed factual allegations,[49] and "[d]etermining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[50] The Plaintiffs' Complaint, taken as a whole, does not offer mere "labels and conclusions," but rather alleges detailed facts which support a plausible claim under the FLSA. Although a pleading standard closer to the Ninth Circuit's is the best approach, the Plaintiffs have still stated a claim for both unpaid overtime and effective minimum-wage violations by alleging that they always worked more than 40 hours per week and were subject to a rate below minimum wage.

The Plaintiffs did not calculate the total of their allegedly unpaid overtime wages, but each Plaintiff did approximate the number of hours that they worked during the weeks of their employment. Furthermore, unlike plaintiffs in the Third Circuit's *Davis* opinion, the Plaintiffs here did allege hours that "put [them] over the forty-hour mark."[51] The Plaintiffs allege that in each of the weeks that they worked, they worked over forty hours but were not compensated. Thus, the Plaintiffs' Complaint is similar to the one at issue in the First Circuit's opinion in

---

The employer, not the employee, bears the burden of maintaining records of how many hours an employee works each week and the employee's pay rate.").

[48] *Lucero v. Leona's Pizzeria, Inc.*, No. 14-C-5612, 2015 U.S. Dist. LEXIS 3378, at *3–6 (N.D. Ill. Jan. 13, 2015).

[49] *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[50] *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

[51] *Davis v. Abington Memorial Hosp.*, 765 F.3d 236, 242–43 (3d Cir. 2014).

*Manning v. Boston Medical Center Group*. There, "the complaint's basic thrust [was] that defendants' pay practices <u>continuously</u> required [defendant's] employees to work time for which they did not receive compensation."[52] Had the Plaintiffs in this case alleged only that they "routinely" worked in excess of forty hours but neglected to include a "given" workweek *or* facts suggesting continuous, weekly violations, the Complaint might be dismissed. But the Plaintiffs allege that they were not paid for completing "indispensable tasks that were necessary to their principal activity of installing and repairing DIRECTV satellite television service" in every week that they worked. (Pls.' Compl. ¶ 65). They elaborate:

> In addition to the certain tasks DIRECTV designated as compensable, Plaintiffs performed other work *each week during the relevant time period* for Defendants, such as assembling satellite dishes, driving to and between job assignments, reviewing and receiving schedules, calling customers to confirm installations, obtaining required supplies, assisting other technicians with installations, performing required customer educations, contacting DIRECTV to report in or activate service, working on installations that were not completed, and working on "rollback" installations where Plaintiffs had to return and perform additional work on installations previously completed.

(*Id.* ¶ 64). In other words, their allegation is that the Defendants violated the FLSA in every "given workweek" in which the Plaintiffs worked. Although an allegation of the "specific workweek"—a phrase changed to "given workweek" by the Ninth Circuit in *Landers*—pushes a complaint past the threshold, the Plaintiffs' allegation that the Defendant was constantly violating the FLSA also pushes this Complaint past the threshold. Therefore, the Plaintiffs' allegations that the Defendants' misclassification, policies, and actions required them to work more than 40 hours per week without proper compensation states a claim under the FLSA.

---

[52] *Manning v. Boston Med. Ctr. Corp.*, 725 F.3d 34, 46 (1st Cir. 2013).

17

Ultimately, the Plaintiffs will have to prove that they were not paid for overtime and were subject to a rate below minimum wage. At this stage, however, the Plaintiffs have satisfied Rule 8's standards: they allege that they performed specific tasks in the weeks that they worked but were not paid for those tasks. Each Plaintiff alleges that he worked either 50 or 60 hours in each of these weeks. This not only led to a wage rate below the required minimum wage, but also to uncompensated overtime. By explaining the specific tasks performed, the dates that they worked, and the policies of their employers, and by approximating the amount of time worked in excess of 40 hours, the Plaintiffs have stated a claim. The Defendants' Motions to Dismiss on these bases are DENIED.

## CONCLUSION

Plaintiff Don Carpenter's claims against DIRECTV are not timely under the three-year statute of limitations. On this limited basis, DIRECTV's Motion to Dismiss is **GRANTED**, but on all other bases presented, it is **DENIED**. Multiband's Motion to Dismiss is likewise **DENIED**.[53]

**IT IS SO ORDERED.**

> s/ S. Thomas Anderson
> HON. S. THOMAS ANDERSON
> UNITED STATES DISTRICT COURT
>
> Date: May 18, 2015.

---

[53] Plaintiffs also filed a Motion for Extension of Time to Amend in the event that the Court granted the Defendants' Motion to Dismiss. (ECF No. 37). The Defendants responded in opposition to that Motion. (ECF Nos. 41, 42). In light of the ruling in this Order, that Motion is **DENIED**.